UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**RICKY A. CARUTHERS**       )
                             )
    v.                          )    Case No. 3:07-0635
                             )    (Criminal Case No. 3:04-00025)
**UNITED STATES OF AMERICA**  )    Judge Echols

### MEMORANDUM

Pending before the Court is Petitioner Ricky A. Caruthers' "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence" (Docket Entry No. 1) in which he claims that his plea of guilty was not made knowingly and voluntarily and that his counsel was ineffective. The Government has filed a response in opposition. (Docket Entry No. 14).

### I.  FACTUAL BACKGROUND

Petitioner was indicted by a federal grand jury on February 26, 2004 for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). After his Motion to Suppress evidence was denied, Petitioner entered a plea of guilty pursuant to a plea agreement ("PA") negotiated with the Government which reserved the right to appeal the denial of the motion to suppress.

The events giving rise to the Indictment and Petitioner's subsequent Motion to Suppress were reviewed on direct appeal. In a published opinion, the Sixth Circuit summarized the operative facts as follows:

At approximately 1:15 A.M. on June 17, 2003, a central dispatcher with the Nashville police and fire departments received an anonymous emergency call. On the basis of this call, the dispatcher created a written report containing the following information: "Male black.... Red shirt, shorts, fired gun in the air, arguing with female at location, gun is in the suspect's pocket, fired the weapon once.... LO[cation], J.C. Napier." ... Officers Carl Stocks ("Officer Stocks") and Jonathan Mays ("Officer Mays") were dispatched to the intersection of Lewis and Lafayette Streets, the location of J.C. Napier public housing development, at approximately 1:20 A.M. They arrived on the scene about three to five minutes later.

The officers observed a black man wearing a red shirt (later identified as Caruthers) entering the parking lot of a nearby gas station; he was walking in the direction away from the J.C. Napier development. Nobody else was in the area. Officer Mays drove away in order to take a position at the opposite end of the alley behind the building. Officer Stocks pulled his cruiser alongside Caruthers, approximately two to three feet away. The cruiser's flashing lights were not on, and Officer Stocks did not have a weapon drawn. Officer Stocks remained in his vehicle's seat and said through the rolled-down window, "hey, man, come here a second," or "hey, man, come here, let me talk to you a second.".... Caruthers then "took off in a hurried[ ] fashion around the corner of the business." ... Officer Stocks exited his cruiser to give chase, momentarily losing sight of Caruthers. Officer Stocks followed Caruthers around the corner, where he saw Caruthers "kind of hunched down a little bit." ... Caruthers was "kind of against the wall of the business and he was kind of leaned over where kind of his knees were kind of bent a little bit, so he was kind of leaning toward the ground." J.A. at 51. Officer Stocks "told him to come here," whereupon Caruthers "turned around, put his hands up[,] and came walking back toward [Officer Stocks]."... Officer Stocks "grabbed ahold of [Caruthers], escorted him to [the] patrol car, [and] placed him in the back seat." Officer Stocks did not tell Caruthers that he was under arrest, pat him down, or handcuff him before placing him in the patrol car, the doors of which were

2

> locked such that Caruthers would be unable to exit the vehicle without kicking out the window.
>
> While these events were unfolding, Officer Mays, who had taken his position at the opposite end of the alley, proceeded to drive up the alley toward Officer Stocks and Caruthers. Officer Mays arrived on the scene as Officer Stocks placed Caruthers in the patrol car. A "few seconds" after placing Caruthers in the cruiser, Officer Stocks "went back to where [he] saw [Caruthers] standing hunched over and found the loaded weapon laying on the ground in plain view." The pistol was "[e]xactly where [Caruthers] was leaned down."... In the pistol's chamber was a round with a crimped tip. Officer Stocks removed Caruthers from the cruiser and patted him down, discovering a bullet in his pants pocket. Officer Stocks arrested Caruthers, placing him in handcuffs. Officer Mays immediately found five more rounds in the back seat of Officer Stocks's cruiser. All of the bullets had crimped tips identical to the one in the pistol's chamber.
>
> The entire encounter-from when Officer Stocks first saw Caruthers to when Officer Mays recovered the ammunition from the back of the patrol car-lasted three or four minutes.

United States v. Caruthers, 458 F.3d 459, 462-63 (6th Cir. 2006)(internal citations to record omitted).

In his present Motion, Petitioner raises one ground for relief. He claims that his counsel was ineffective because he failed to investigate the case and therefore Petitioner "had no option but to plead guilty." (Docket Entry No. 1 at 4).

## II. STANDARD OF REVIEW

To prevail on a § 2255 motion, the Petitioner must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see

3

Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of error must be raised in the trial court and on direct appeal or such claims are procedurally defaulted. See Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the trial judge also hears the collateral proceedings, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

4

### III. ANALYSIS

As indicated, Petitioner's sole claim is that counsel was ineffective in failing to investigate the case. To establish ineffective assistance of counsel, Petitioner must show that his trial or appellate counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999).

A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Id. In the context of a guilty plea, this means that a Petitioner must show "prejudice by demonstrating 'a reasonable probability that, but for counsel's errors, [the Petitioner] would not have pleaded guilty and would have insisted on going to trial." Miller v. Straub, 299 F.3d 570, 578 (6th Cir. 2002) (quoting, Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Petitioner has made no such showing in this case.

5

In alleging an ineffective investigation by counsel, Petitioner asserts, in a wholly conclusory fashion, that a clerk and customers were present in a nearby store who "would have discredited all claims by Officer Stocks," and that a nearby car dealership "possibly had surveillance camera's [sic] (tapes)" (Docket Entry No. 1 at 4) which could have been reviewed.

In establishing ineffective assistance of counsel, Petitioner bears "a heavy burden of proof." Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005). Petitioner "must show that counsel did not attempt to learn the facts of the case" and that "his lawyer's deficiency was a decisive factor in his decision to plead guilty." Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006). Petitioner has failed to carry that burden.

Petitioner's suggestions that there were potential witnesses in a nearby store, and that there may have been surveillance cameras located in the area are insufficient to raise the specter of ineffectiveness. Petitioner has made absolutely no showing that any potential witnesses observed the events, let alone that they would have testified in favor of Petitioner. Similarly, Petitioner has made absolutely no showing that there were, in fact, video surveillance cameras nearby, let alone that any such cameras captured the events on the night in question and that they would have somehow exonerated Petitioner. While failure to investigate

6

can establish ineffective assistance of counsel, mere speculation on the part of Petitioner that there may have been favorable witnesses or evidence is not sufficient to show ineffectiveness or prejudice.  See, United States v. Vazquez-Garcia, 211 Fed. App. 544, 546 (8th Cir. 2007); United States v. Massara, 174 Fed. Appx. 703, 710 (3d Cir. 2006); United States v. Stevens, 2006 WL 401825 at *2 (10th Cir. 2006).

On its face, Petitioner's claim that his attorney failed to adequately investigate the case is difficult to reconcile with counsel's other actions in this case.  Throughout the pretrial process, counsel was diligent in protecting Defendant's rights. Counsel filed a Motion and Memorandum in an effort to suppress evidence.  At the evidentiary hearing on the Motion, counsel vigorously cross-examined the witnesses called by the Government. Given counsel's obvious attention to this case, it seems incongruous that counsel would choose to forego interviewing witnesses favorable to the Petitioner or neglect to review a videotape containing exculpatory evidence.

Regardless, Petitioner's present assertion that counsel was deficient in failing to adequately investigate the case is belied by his written Plea Petition, the PA, and his own colloquy with the Court when the Court was determining whether to accept his guilty plea.  In his Plea Petition, Petitioner stated he had told counsel

7

about all the facts and circumstances surrounding the charges in the indictment, that counsel knew all the material facts known to Petitioner, and that his lawyer thoroughly discussed the case against him, along with his potential defenses. (Plea Petition ¶ 4). Moreover, in his Plea Petition, Petitioner agreed that the following was true:

> (8) My lawyer has done all that anyone could do to counsel and assist me, and I understand the proceedings in this case against me. My lawyer has done all the investigation and research in this case that I have asked him to do and I am satisfied with his representation to this point.

(Id. ¶ 8). In the colloquy with the Court, Petitioner confirmed that counsel had thoroughly discussed the case with him, including any potential defenses that he may have to the charges against him. The Court specifically asked Petitioner at the plea hearing if he was satisfied with his attorney and if he had any complaints about anything his lawyer had done on his behalf or whether he had any complaints about anything his lawyer had not done which he thought he should have done to represent him. As borne out by the following exchange, Petitioner responded unequivocally that he was satisfied with his attorney and he had no complaints about his representation:

> COURT: And do you believe that your lawyers know everything about this charge, and do you believe that they are fully aware of the facts upon which this charge is based?

>     PETITIONER: Yes, sir.
>
>     COURT: Has your lawyer also discussed with you any potential defenses that you might have to this charge?
>
>     PETITIONER: Yes, sir.
>
>     COURT: Are you satisfied with the advice your lawyer has given you up to this point?
>
>     PETITIONER: **Yes, sir. I am very satisfied**.
>
>     COURT: Do you have any complaints about the representation of your lawyer in any respect, or do you have any complaints about things your lawyer has not done that you believe that he should have done?
>
>     PETITIONER: **None at all, Your Honor.**

(Plea Hearing Transcript, pp. 9-10) (emphasis added).

A plea colloquy is a solemn event and "dispositions by guilty pleas are accorded a great measure of finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977). Because courts must be able to rely on a defendant's statements during a plea colloquy, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. McMaster, 403 F.3d 216, 221 (4th Cir. 2005)(collecting cases). Here, Petitioner, under oath, assured the Court that he had no complaints about his attorney's representation, that his attorney had done everything asked of him, and he did not know anything he should have done that he did not do

9

to represent him in the case.  His present effort to discredit those statements and to avoid such personal assurances given to the Court are without merit.  See, United States v. Stewart, 198 F.3d 984, 987 (7th Cir. 1999)("Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard").

## IV.  CONCLUSION

On the basis of the foregoing, Petitioner's "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence" (Docket Entry No. 1), will be denied.  Further, because Petitioner cannot demonstrate that reasonable jurists would find the Court's assessment of the voluntariness of his plea of guilty debatable or wrong, or that jurists of reason would find it debatable whether Petitioner can show ineffectiveness of counsel and prejudice from counsel's alleged deficiencies, a Certificate of Appealability will not issue.  See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE